**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>PILAR ROSE,<br><br>        Defendant. | Case No.: 1:21-cr-00112 JLT SKO<br><br>ORDER RE INTERLOCUTORY SALE OF 2018 BMW M550i, VIN: WBAJB9C54JB035654, LICENSE: LTIG8TR |

The government seeks an order allowing the interlocutory sale of a car, which, it claims was purchased through bank fraud. The government asserts that the car is losing value and the government is being required to pay storage fees. For the reasons set forth below, the Court **GRANTS** the motion.

**I.     Background**

Among other counts, the government alleges in Count Six of the indictment that Ms. Rose submitted a loan application to purchase a car, which contained false information. (Doc. 1 at 8-9) The government alleges that on the loan application, Ms. Rose used a social security number belonging to another person and claimed to be an attorney despite that she was not. Id. Consequently, the government asserts that this resulted in a "substantially higher credit score" than was accurate and that this caused the bank to make the loan in the amount of $65,839[1]. Id. In connection with Count Six, the government seeks forfeiture "pursuant to 18 U.S.C. § 982(a)(2)(A), [of] any property constituting or derived from proceeds obtained directly or indirectly, as a result of said violations. . ."

---

[1] The cost of the car was $90,839.15, (Doc. 34-1 at 2.)

Within a few months of Ms. Rose's arraignment, the government filed a lis pendens on her family home and filed a Notice of Bill of Particulars for Forfeiture of Property, specifically listing the "2018 BMW M550i, VIN: WBAJB9C54JB035654, License: LTIG8TR" as property subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A). (Doc. 21 at 1-2) On July 9, 2021, the government seized the vehicle and has been storing it since that time. (Doc. 34-3 at 1) Since the car was purchased, it has lost approximately $45,000 in value and the government has incurred costs of $173 per month in storage costs. Id. at 1-2. The government seeks an order selling the car with the proceeds being held pending disposition of the case. Id. at 2.

**II.      Discussion**

Rule G7(b) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions invests in the Court the authority to "order all or part of the property sold if: the property is perishable or at risk of deterioration, decay . . . the expense of keeping the property is excessive or is disproportionate to its fair market value . . . or the court finds other good cause." Fed. R. Civ. P. Supp. G(7)(b)(i). The burden of proof lies with the moving party. United States v. Approximately 81,454 Cans of Baby Formula, 560 F.3d 638, 641 (7th Cir. 2009). The Court is entitled to "considerable discretion" in choosing the "factors to consider, and what weight to give them." Id.

The government argues that interlocutory sale of the BMW is warranted due to the storage costs and the car's depreciation. (Doc. 34-1 at 3) Indeed, despite that the indictment was filed 15 months ago, discovery is ongoing (Doc. 39), and no trial date has been set and it appears unlikely a trial will occur for many months.

Ms. Rose opposes the sale. She argues that it is premature and unfair to sell the car because the government has not proved that forfeiture is warranted. (Doc. 41 at 2) At the hearing, she argued that unless the bank is shown to have been "affected" by the fraud, she cannot be convicted of the offense and the issue of forfeiture cannot arise. She notes that she now has clear title to the BMW. Without deciding this issue here, this argument appears contrary to the statute and the authorities.

The elements of 18 U.S.C. § 1344 are: "(1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC [Federal Deposit

Insurance Corporation]." United States v. Rizk, 660 F.3d 1125, 1135 (9th Cir. 2011) Likewise, in United States v. Mason, 902 F.2d 1434, 1442 (9th Cir. 1990), the Ninth Circuit held,

> [W]e conclude a federally supported financial institution need not incur a "loss" in order to be a victim of "false or fraudulent pretenses, representations, or promises." Such a narrow construction would only permit the punishment of the "loss" rather than the conduct that led or could lead to a loss. For example, some financial institutions, as a matter of policy, may not normally lend credit to enterprises engaged in prostitution because of a greater credit risk or for other legitimate reasons. A business applicant who misrepresents the true nature of the business would secure credit solely on the basis of the false statements.

Mason noted at footnote 5,

> In United States v. Swearingen, 858 F.2d 1555 (11th Cir.1988) (per curiam), cert. denied, 489 U.S. 1083, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989), the Eleventh Circuit confronted an analogous argument. That case involved a scheme between two automobile dealers who fabricated illegitimate automobile sales in order to obtain interest-free loans. The bank would give the dealers immediate credit by increasing the checking account balance in the amount of the fictitious sale. The appellant argued that the two automobile dealers "were actually selling each other automobile titles ... and thus could not have intended to defraud the Bank." Id. at 1556. The Eleventh Circuit, in adopting the reasoning of the district court, noted that the central "question is whether the false representations were capable of influencing the Bank's actions." Id. at 1558 (emphasis added). Accord United States v. Goldblatt, 813 F.2d 619, 624 (3d Cir.1987) (noting "[t]he Government was not required to show that [the bank] incurred a loss in order to prove a scheme to defraud") (cited in Bonallo, 858 F.2d at 1433 n. 7).

On the other hand, Mr. Rose notes, correctly, that forfeiture is a punishment to be imposed only once a defendant is convicted of a crime. However, in doing so, she ignores that at the hearing she admitted through counsel that the car is not unique and by selling it now, the value from the car is preserved as substitute *res* in the event forfeiture is determined to be warranted.[2] Thus, she suffers no prejudice if the car is sold and does not lose the proceeds merely because the car is sold.

Ms. Rose also contends that the sale is unfair because she is entitled to a set-off for the amounts she has paid for the car. (Doc. 41 at 3) In doing so, she argues that the government must proceed under 18 U.S.C. 981 rather than § 982. She argues that the government served an administrative notice that referred to the former statute. However, she has not provided any evidence this occurred and, even if it did, she does not provide authority for the proposition that the administrative notice supersedes the indictment and the Bill of Particulars, which rely upon section 982.

Notably, 18 U.S.C. 982(a)(2)(A) does not allow for set-off. The section provides, "The court,

---

[2] At the time of the hearing, counsel for Ms. Rose suggested as an alternative, that she could deposit enough cash to cover the loan amount and the storage fees, but she stopped short of actually committing to doing so.

in imposing sentence on a person convicted of a violation of, or a conspiracy to violate-- . . .section 1344 . . . shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." This is much different from § 981, which governs civil forfeiture and reads, "In cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim."

Given these considerations, the Court concludes that interlocutory sale of the vehicle is warranted under Rule G7(b)(i).[3] Because the parties have indicated recently they are not prepared to set the case for trial and they will not appear for a status conference until October, it is apparent that trial will not occur for many, many months during which the storage costs will continue to accrue and the vehicle will continue to depreciate. Interlocutory sale of the car will best preserve its value. Thus, the Court **ORDERS**:

1. The motion for interlocutory sale of the 2018 BMW is **GRANTED**.

2. The 2018 BMW shall be sold by the IRS-CI in the most commercially feasible manner and consistent with the terms of this order:

a. The IRS-CI is authorized to retain a vendor who shall be paid the usual and customary commission and/or fees from the proceeds of the sale or use any other commercially feasible method to sell the 2018 BMW.

b. The IRS-CI shall deduct its lawful costs and expenses relating to its custody, maintenance, and sale of the 2018 BMW from the sale proceeds. The remaining net proceeds of the sale, if any, shall be deposited in the TREASURY ASSET FORFEITURE FUND and shall be substituted as the property in this action.

///
///
///
///

---

[3] Courts have ordered the interlocutory sale of a vehicle when it caused "substantial storage costs" and was "depreciating in value." See, e.g., United States v. One 2010 Dodge Ram, 2015 WL 685208 (D. Md. Feb. 18, 2015).

      c.      The IRS-CI shall retain custody of the 2018 BMW until it is sold pursuant to this order.

IT IS SO ORDERED.

Dated: __August 3, 2022__

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE